IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD R. HARRISON, | ) | Case No. 5:16-cv-02209 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

**I.     Introduction**

Plaintiff Donald R. Harrison seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

Because the ALJ supported his decision with substantial evidence and correctly applied the applicable law, I recommend that the final decision of the Commissioner be **AFFIRMED**.

**II.    Procedural History**

In 2013, Harrison filed an application for DIB, alleging that he became disabled on November 1, 2011. (Tr. 141-45) After the Social Security Administration denied his application, he attended a hearing on his claim before Administrative Law Judge Steven D. Bell. (Tr. 46-51) The ALJ denied Harrison relief. (Tr. 8-25) The Appeals Counsel declined to review

the case. (Tr. 1-4) Harrison instituted this action to challenge the ALJ's finding that he did not meet Listing 1.04 and for not consulting a medical expert in reaching that conclusion. ECF Doc. No. 11, Page ID# 622-32.

**III.     Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at

---

[1] "[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

The ALJ issued a decision on July 6, 2015, finding:

1. Harrison last met the insured status requirements of the Social Security Act through December 31, 2015. (Tr. 13)

2. Harrison did not engage in substantial gainful activity since November 1, 2011, the alleged onset date. (Tr. 13)

3. Harrison had the following severe impairments: degenerative disc disease of the lumbar spine, affective disorder. (Tr. 13)

4. Harrison did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14)

5. Harrison had the residual functional capacity to perform sedentary work but needed to be allowed to stand for ten minutes after sitting for thirty minutes (doing so would not require the claimant to be off task more than two minutes with any change of position); unskilled and semi-skilled jobs performed in a relatively static work environment where there are routine, repetitive, and

3

predicable duties; when changes occur in said workplace, those changes must be introduced gradually and be explained and or demonstrated; no fast pace production demands, no high production quotas; and no strict time requirements; no contact with the public and occasional contact with coworkers. (Tr. 16)

6. Harrison was unable to perform any past relevant work. (Tr. 19)

7. Harrison was born on September 21, 1976, and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (Tr. 19)

8. Harrison has at least a high school education and is able to communicate in English. (Tr. 19)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (Tr. 19)

10. Considering Harrison's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the he could have performed. (Tr. 19)

Based on these findings, the ALJ determined that Harrison had not been under a disability from November 1, 2011, through the date of the decision. (Tr. 20) Harrison argues that the evidence of record should have led the ALJ to conclude that Listing 1.04 was met. The Commissioner contends that absent evidence that plaintiff had functional limitations and could not walk or could only walk with the assistance of a cane or other assistive device, he did not meet the requirements of Listing 1.04.

V.     **Relevant Evidence**

Harrison reported that his back pain began after a 2006 workplace injury. (Tr. 230, 496) On May 7, 2010, Harrison underwent a right L4-L5 laminectomy and partial discectomy. (Tr. 230) Mark E. Coggins, M.D., reported that prior to surgery Harrison had a large right L4-L5

4

herniated disc that was causing L5 nerve compression. (Id.) Following surgery, Dr. Coggins reported that, "the L5 nerve root was quite free and had excellent excursion." (Id.)

An MRI of Harrison's lumbar spine performed on October 19, 2011, demonstrated moderate disc herniation impinging on the right L5 nerve root (Tr. 223). On February 9, 2012, Harrison reported back pain and lower extremity pain aggravated by activity, movement, and walking. (Tr. 216) Upon examination, Harrison's muscle strength and sensation were normal. (Tr. 217) Harrison's reflexes were 0 for his left Achilles and 1+ for his right Achilles.[2] (Id.) Dr. Coggins recommended physical therapy. (Id.)

On April 24, 2012, Harrison received epidural steroid injunctions from David Gutlove, M.D. (Tr. 235-36) At that time, Harrison complained of right leg weakness and difficulty with steps. (Tr. 235) On examination, Dr. Gutlove noted full muscle strength and no evidence of clonus or hyperflexia. (Id.)

On July 16, 2012, Harrison reported worsening low back pain that radiated to his legs. (Tr. 268) Neurosurgeon Phillip A. Immesoete noted that Harrison tried and failed physical therapy and lumbar epidural steroid injections. (Id.) An examination revealed normal muscle strength, reflexes, and sensation. (Tr. 269) Dr. Immesoete noted that an October 2011 x-ray showed recurrent disc herniation but stated that Harrison's most recent MRI showed "an almost completely reabsorbed disc with very[] little evidence of recurrence." (Tr. 270, 275) Thus, Dr. Immesoete determined that Harrison was not a good candidate for re-exploratory surgery. (Id.)

---

[2] Deep tendon reflexes are grades as follow: 0 = no response, always abnormal; 1+ may or may not be normal; 2+ = normal; 3+ may or may not be normal; 4+ = always abnormal. Walker, Kenneth H., Clinical Methods: The History, Physical, and Laboratory Examinations., 3rd Edition., Chapter 72, Deep Tendon Reflexes.
 https://www.ncbi.nlm.nih.gov/books/NBK396/ (last visited June 14, 2017).

On October 9, 2012, Harrison presented to Scott Miller, DO of the Crystal Clinic Orthopedic Center with complaints of persistent chronic back and radicular leg pain. (Tr. 285-86) Upon examination, Dr. Miller noted the following:

> Gait is normal without list or antalgia, and without myelopathic findings. Strength: Decreased strength and sensation is noted in the right L5 dermatome. He has weakness of anterior tibialis on the right at 4/5. No sensory deficit is noted on the left . He had good motor strength and tone, left L2-S1 . Reflexes are normal, as stated . Sensation : Intact to touch L2-Sl bilaterally. DTR : Patella +l, Achilles +l bilaterally. Pathological reflexes: Babinski negative, clonus absent bilaterally . Stretch test: Femoral stretch negative bilaterally, straight leg raising negative bilaterally. Lumbar motion: Limited lumbar mobility is noted. Hip mobility testing: Unrestricted mobility without pain reproduction bilaterally. Spasm: Absent. Greater trochanteric tenderness : Absent.

(Tr. 285) Dr. Miller determined that Harrison would likely benefit from surgical micro-decompression and Harrison agreed to proceed with surgery. (Tr. 286) Accordingly, on December 14, 2012, Harrison underwent a "[r]evision right L4 unilateral laminectomy with discectomy and lateral recess decompression, right L4 and L5 foraminotomoy." (Tr. 294)

At a follow-up visit the next month, Harrison complained of low back pain and radicular pain in his legs and knees. (Tr. 300) An examination revealed some weakness in the anterior tibialis on the right 4/5 when compared to the left, as well as tightness in his leg muscles and hip flexor. (Id.) A nurse practitioner at the Crystal Clinic recommended physical therapy. (Id.)

A January 30, 2013, MRI demonstrated disc bulging as well as "mild lateral recess stenosis and moderate left neural foraminal narrowing with disc osteophyte encroachment upon the exiting left foraminal nerve roots." (Tr. 303) On February 19, 2013, Harrison returned to Dr. Miller complaining that his symptoms were "worse than before surgery." (Tr. 305) Upon examination, Harrison got up and moved about without difficulty. (Id.) He had good motor tone and strength with a mild sensory decrease on the right in the L5 dermatome. (Id.) Pathological reflexes were absent. (Id.) Dr. Miller recommended nerve testing. (Id.)

6

On March 4, 2013, Harrison underwent electrodiagnostic testing of the bilateral lower limbs. (Tr. 307). Harrison reported constant burning pain along his buttocks, posterior thighs, and calves. (Id.) He stated that his symptoms were worse with walking and going up stairs, but relieved with medication and relaxation. (Id.) Nerve conduction studies and needle electromyography yielded normal results and revealed no electrophysiologic evidence of neuropathy. (Tr. 308)

Harrison began a round of physical therapy in April 2013. (Tr. 318-29) On May 9 2013, Harrison requested to skip traction and therapeutic exercise due to radicular symptoms and extreme soreness. (Tr. 322) On his final visit in May 2013, Harrison reported that he had good and bad days. (Tr. 318) He also stated that he felt like had improved but experienced more soreness. (Id.)

On May 30, 2013, Harrison presented to pain management complaining of continued lower back pain radiating into his lower limbs. (Tr. 334) Harrison noted some improved mobility, but stated that his pain worsened with overexertion and bending. (Id.) He also reported associated weakness. (Id.) An examination revealed tenderness of the lumbosacral region, as well as restricted flexion/extension, and a positive straight leg test. (Tr. 335) Harrison's neurological testing yielded results. (Id.) A follow up visit on August 13, 2013, revealed nearly identical complaints and examination results. (Tr. 448-49)

A September 2013 MRI showed recurrent disc herniation at L4-5 with disc osteophyte complex and a mass effect on the L5 nerve root. (Tr. 439, 491). On February 4, 2014, the pain management clinic noted that Harrison's Bureau of Worker's Compensation claim had been expanded for the allowance of post-laminectomy syndrome. (Tr. 430) Subsequently, he began a series of low back trigger point injections. (Tr. 428). On April 25, 2014, Harrison consulted with

the Aultman Center for Pain Management for a spinal cord stimulator trial. (Tr. 468-70) A physical examination showed tenderness involving the lumbar paraspinal muscle area with some muscle spasm, limited range of motion, and positive straight leg raise tests. (Tr. 469) The examination also revealed full muscle strength, no sensory deficits, and normal reflexes. (Id.)

On May 3, 2014, Aultman Hospital admitted Harrison due to a poly pharmacy overdose. (Tr. 383) He denied suicidal ideation. (Id.) Without medication his back pain had flared up and hospital staff noted an unsteady gait. (Id.) The hospital discharged Harrison in stable condition, noting that his strength, sensation, and reflexes were all intact. (Tr. 384)

On January 20, 2015, Harrison had a successful trial implantation of a spinal cord stimulator. (Tr. 462) He reported that with implantation his pain level diminished tremendously, and requested permanent implantation after its removal. (Tr. 457). An examination revealed full muscle strength and no sensory deficits. (Id.) On April 20, 2015, Harrison underwent emergency heart surgery. (Tr. 504) On May 5, 2015, the pain management clinic noted that Harrison's approval for a spinal cord stimulator was on hold for at least six months because of his recent heart attack. (Tr. 478)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether substantial evidence in the record supported the ALJ's findings of fact and whether the ALJ correctly applied the appropriate legal standards. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence

8

has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The court must also determine whether the Commissioner applied proper legal standards. If not, the court must reverse the Commissioner's decision, unless the error of law is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B. Substantial Evidence Supports the ALJ's Determination that Harrison did not meet Listing 1.04

In his sole challenge to the Commissioner's decision, Harrison alleges that the ALJ erred at Step Three of the disability evaluation by finding that he did not meet Listing 1.04. ECF Doc. No. 11, Page ID# 627-32. The ALJ recognized that Harrison's degenerative disc disease resulted in significant physical work restriction, including a limitation to sedentary work and the need to stand for 10 minutes after 30 minutes of sitting. (Tr. 16, 18) Nonetheless, the ALJ determined that Harrison's complaints were not as severe as alleged because they were inconsistent with the objective evidence in the record and did not meet Listing 1.04. (Tr. 14, 19)

At Step Three of the five-step disability evaluation process, a claimant will automatically be found disabled if he meets one of the listed impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 416.920(d); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). It is the claimant's burden to prove that he meets or equals all of the objective medical and other findings needed to satisfy the criteria of that listing. 20 C.F.R. § 404.1525(c)(3), 416.925(c)(3); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *See also Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). However, "[i]n order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for [the] decision." *Colvin v. Comm'r of Soc. Sec.,* No. 5:13CV2674, 2015 WL 1471769, at *1 (N.D. Ohio Mar. 31, 2015).

Listing 1.04 refers generally to disorders of the spine. Harrison argues specifically that he meets or equals the criteria for Listing 1.04A. Listing 1.04A provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ's Step Three determination merely states that Harrison does not meet Listing 1.04 because, "[n]o treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." The ALJ also cited the conclusions of the state agency medical consultants, "who examined this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (Tr. 14) A review of the administrative record supports the ALJ's conclusions on these points: no medical source has said Harrison meets Listing 1.04, and the state agency reviewers have concluded that he does not. Having said that, I conclude that the ALJ's description of his decision-making process on his analysis of Listing 1.04 could have been more expansive, to say the least.

However, reading the ALJ's decision as a whole demonstrates that substantial evidence supports the ALJ's determination that Harrison did not meet Listing 1.04. On several occasions, the Sixth Circuit has upheld an ALJ's sparse Step Three determination when the ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) *citing See Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 411 (6th Cir.2006) (looking to findings elsewhere in the ALJ's decision to affirm a Step Three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time") and *Burbridge v. Comm'r of Soc. Sec.,*

572 Fed.Appx. 412, 417 (6th Cir.2014) (Moore, J., dissenting) (acknowledging that an ALJ's step-three analysis was "cursory" but suggesting that, under our precedent, it is enough for the ALJ to support his findings by citing an exhibit where the *exhibit* contained substantial evidence to support his conclusion).

Here, viewing the decision as a whole, although Harrison's degenerative disc disease satisfies 1.04A's threshold requirement, the record contains significant evidence that Harrison did not meet 1.04's requirement for "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." The ALJ found that Harrison's examinations throughout 2010 and 2012 routinely showed unimpaired muscle strength and a great ability to stand and walk then what was alleged. (Tr. 17, 214). The ALJ also noted that Harrison's "strength and sensation in his lower extremities [was] shown as improved in recent time." (Tr. 17, 384 – Ex. 9F3). Indeed, during a February 2013 physical exam, Scott D. Miller, DO noted that Harrison was able to get up and move about without difficulty and had good motor tone and strength. (Tr. 17, 305 – Ex. 5F29) A March 2013 electrodiagnostic test similarly revealed normal motor and sensory results. (Tr. 308) In fact, the vast majority of treatment notes are consistent with those cited by the ALJ, revealing no motor loss and normal muscle strength. (Tr. 384, 469, 474, 496).

Harrison cites a string of treatment notes to support his claim that he met the requirements of Listing 1.04. ECF Doc. No. 11, Page ID# 630-31 citing (Tr. 235, 268, 271, 285, 334-35, 439, 449, 491). However, Harrison's citations belie his argument. First, the majority of treatment notes Harrison cites support the ALJ's conclusion that muscle strength was unimpaired. (See e.g., Tr. 235 "5/5 strength in lower extremities"; Tr. 268-69 examination showing strength, sensation, and reflexes as normal; Tr. 273 "5/5 normal muscle strength.")

Only one treatment noted cited by Harrison indicated that there was some decreased strength, sensation, and weakness upon examination. (Tr. 285, October 2012). However, subsequent treatment notes showed no decrease in strength, sensation, or weakness during examination. (Tr. 17, 305 – February 2013; 384 – May 2014; 469-April 2014; 474-January 2015; 496-April 2015). Therefore, Harrison did not met his burden of establishing that he met Listing 1.04. *See Lett v. Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *17 (N.D. Ohio Feb. 26, 2015) (finding that plaintiff did not meet her burden where she failed to establish more recent evidence that she met the listing). And the ALJ made sufficient findings elsewhere in his decision to support his Step Three determination that Harrison did not meet Listing 1.04.[3] *See Rolus v. Colvin*, No. CIV-15-1162-STE, 2016 WL 5316821, at *4 (W.D. Okla. Sept. 22, 2016) (affirming the ALJ's finding that claimant did not meet Listing 1.04 because claimant had not provided evidence of motor loss); *Candelario v. Barnhart*, 166 F. App'x 379, 384 (10th Cir. 2006) (upholding the ALJ's listing 1.04 determination where claimant did not demonstrate motor loss). Accordingly, the ALJ's decision is supported by substantial evidence.

Even if the ALJ's reasons failed to support his Step Three findings, the error is harmless, because Harrison has not shown his impairments met or medically equaled the severity of the Listing. *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014)

With regard to medical equivalence, as noted above, the ALJ determined that no treating or examining physician indicated findings that would satisfy the severity requirements of any

---

[3] Although substantial evidence supports the ALJ's determination that Harrison does not meet Listing 1.04, it should be noted that the Commissioner's argument that Harrison does not meet Listing 1.04 because he did not show an inability to ambulate effectively misses the mark. ECF Doc. No. 13, Page ID# 651-53. Harrison argued that his impairment met Listing 1.04A. An inability to ambulate effectively is a condition of Listing 1.04C, not 1.04A. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

listing impairment. (Tr. 14) Although Dr. Miller's October 2012 treatment note could provide support for medical equivalency, the ALJ determined that Harrison's December 2012 surgery appeared to alleviate "the most acute of his symptoms." (Tr. 17) That determination is supported by substantial evidence and Harrison fails to point to any treatment notes subsequent to the December 2012 surgery that satisfy the severity requirements of Listing 1.04. Thus, the ALJ had substantial evidence to find that medical equivalency had not been established.

Finally, at the end of Harrison's brief, he provides a conclusory statement that this court should also "order that consultation of a medical expert is necessary to address equivalency to Listing 1.04." ECF Doc. No. 11, Page ID# 631. However, issues adverted to "in a perfunctory manner, unaccompanied by some effort at developed argumentation," are deemed waived. *Kennedy v. Comm'r of Soc. Sec.,* 87 Fed. App'x 464, 466 (6th Cir.2003); *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997). Harrison provides no authority to support his contention that the ALJ had a duty to consult a medical expert and, as discussed above, Harrison has not shown that his impairments met or medically equal Listing 1.04. Based on the issues Harrison raises, I find no basis upon which to conclude that the ALJ failed to support his conclusions with substantial evidence.

## VII. Recommendation

Harrison has not demonstrated a basis upon which to reverse or remand the Commissioner's decision. Accordingly, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: June 16, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).